3-12-0799 Community Christian School at All v. J. Rowell, Illinois Department of Employment Security, accounted by Paul Risset. Mr. Risset? Good afternoon, Your Honors. May it please the Court, Counsel, my name is Paul Risset, I'm an Assistant Attorney General for the State of Illinois, and I represent the Illinois Department of Employment Security and its director in this appeal. This is an administrative review action where a school sought review of the director's decision to deny an exemption from coverage in the unemployment insurance system. In such an action, this Court reviews the agency's decision, not that of the circuit court. Accordingly, that's because the circuit court acts as a reviewing court, not as a fact finder and doesn't act as a decision maker. Accordingly, you give no deference to the circuit court's decision and you look at it anew as if it had never even gone through the circuit court. Now whether Unity proved that it meets the exemption for religious schools is a mixed question of law and fact. That's so because you're applying the facts to a statutory standard, and you review a mixed question of fact and law for clear error, so you only reverse the director's decision if you find after reviewing the record that you have a firm and definite conviction that a mistake has been committed. Regarding exemptions in general, just as in exemptions from tax cases, they're to be strictly construed and the applicant for the exemption has a strict burden of proving that it qualifies for the exemption. Further, because the Unemployment Insurance Act, its purpose is to promote public welfare, courts liberally construe cases so that employers and employees will be covered rather than exempt. Unemployment insurance is a joint federal and state program, and therefore any state that participates has to meet the minimum standards of coverage that the federal government requires. At one time, both Illinois and the federal government had a broad exemption that exempted all schools, public or private, secular or religious, from participation in the unemployment system. However, this led to harsh results because if a teacher or a cafeteria worker or a janitor were involuntarily separated from employment, they couldn't get benefits. So in the mid-1970s, Congress narrowed the exemption where now only certain religious schools can get the exemption, not any school, and Illinois followed suit with a very similar provision shortly thereafter. And so what the provision says now is that if a school is not separately incorporated from a church, a convention of churches or an association of churches, it's exempt. That's because the employees then are basically direct employees of the church. Those schools are armed with the church. So a church's purpose is clearly religious, and so they would get the exemption automatically. The second group of schools, those that are separately incorporated, like the one here today, Unity, they have to show a couple things to qualify for the exemption. There's still a possibility they can be exempt, but they're not automatically like the ones that are not separately incorporated. They have to show that they're not an institution of higher education, which is undisputed in this case. They have to show that they're operated primarily for a religious purpose, and they have to show that they're either operated, controlled, supervised, or principally supported by a church, convention of churches, or association of churches. In this case, is the only evidence about the support, the $150,000 donation, is that the only evidence put in about the financial support? Correct me if I'm wrong. There's nothing about their budget, there's nothing about their financial support. So there was nothing else put on by them about their total gross budget, and how much that represents. Principally funding means the majority, doesn't it? Principally what? Right, correct. So they didn't put on, for example, to show how much of their income is from tuition, how much of it is from private donations, and how much of it is from church donations. They didn't put that on. In that one page that talks about the brief history of the church, there's a passing reference that in, I think, 2007, some Chicago churches made a one-time lump sum donation of $150,000 that was disbursed, I think, over a number of consecutive years in diminishing amounts. But that's all we have. We don't know what percentage of their budget that is. And again, the one seeking the exemption has the burden of proving that they're entitled to it. So the only information about monetary support was that? Yes, and then also I think that there's a suggestion, they said in the circuit court that if they're covered and they have to pay contributions, that they'll have to raise tuition on the parents. So that suggests that that is where they get their primary income from. They don't say, we're going to have to go to the churches and ask for them to cover the contributions that they have to pay. So regarding that first group of schools, the ones that are not separately incorporated from churches, those are the cases like St. Martin, Lake Region, and that Lutheran Sinai Bowling case. So in those cases, they never reached whether the church was operated, I mean, the school was operated primarily for a religious purpose because the ones that are parts of churches don't have to show that. All they have to show is that they're not separately incorporated. So those cases really aren't helpful here. There really is not a case in Illinois that's looked at this yet, a published case. That's why organizations which are also under the same exemption are helpful, like the cemetery cases and the case St. Augustine, which is about a social service agency for Native Americans. And you look at those cases and they show that whether the primary purpose is religious or if it's secular, like the cemetery, courts have found that burial of the body is the primary purpose, which goes on whether it's a secular cemetery or religious. And with the religious group that was providing social services to the Native Americans, again, even though there was chapel offered and some religious component to it, that the main thing was helping them find jobs, job training, financial assistance, things like that. But basically are you talking about Sunday school as qualified? That certainly would because most Sunday schools do spend the majority of their time on religious instruction. That's what we think is the only workable test. The language is whether it's operated primarily for a religious purpose, not whether subjectively the school thinks that religion is the most important thing to it or whether its goals or aspirations are to be religious. It's to say, show us your day-to-day operation, what your curricula is, and if you really are spending a primary amount of your time on religious instruction, then you qualify. But if you're a typical high school that's teaching algebra and chemistry and things like that, then your primary purpose is secular education. You still do have a purpose. I mean, that's the primary purpose of the parochial schools, isn't it? Even the parochial schools. Correct. And many parochial schools do not get the exemption. You know, they do have religious study in which they can't do in a public school. Correct. And you mentioned that they don't teach Thai religion to algebra, and I suspect if that were the test, all the parochial schools would be out of business. Isn't your best argument the second prong of this thing? About the support? Well, that's why I put it first around. I think it's the cleaner way to dispose of the case. I mean, this is not even a school that's connected to a church. It was a group of parents who happened to share the same religious beliefs, Lutheran beliefs, that founded this school and that operate this school. And their principal's testimony in their own constitution say that they're not subordinate to any ecclesiastical organization. They're not one themselves. They don't claim to be a church. And that also that they're autonomous, meaning independent. So there is no... Clearly, under their own evidence, they refute that they're controlled, supervised, or operated by a church. And then the only shred of evidence about the monetary support is this $150,000 donation back in 2007. So this case is really about a failure of proof. I mean, they wanted the exemption. They had to marshal their evidence and come in. But all we had was one witness who testified for about five pages on direct examination. A lot of it sort of vague, conclusory things like, we tried to integrate scripture into all of our classes. We encouraged teachers to do that. But he didn't testify that he ever saw a teacher do that. No teacher was called to testify to say that they did that. And as I point out, it's hard to even imagine how you could do that in certain topics like chemistry or algebra. Well, I don't... And don't you guess you don't have to, to be still principally for religious purposes? It doesn't mean that you can't have secular, teach secular subjects, right? No, it's just which one's primary. If the majority of the day is spent on secular topics, you're not operated primarily for a religious purpose. So a typical, say, Catholic high school, like the one that I went to, where we had one religion period per day, and the other six were secular topics, they wouldn't qualify for this exemption because even though they have a religious purpose, it's the secondary purpose. They qualify under the first thing that they're owned by the church, right? Yes, they do. I mean, they construction themselves in such a way where they do get the exemption, but there may be reasons why they don't do that, such as liability or whatever. But again, this school isn't even connected to a church. So sometimes they are connected to a church and are separately incorporated. But this one... So that's why how could they ever show the control, supervision, or operation when they say that they're autonomous? It's a bunch of parents that make all the decisions. And while they do share Christian principles and Lutheran beliefs, no one at the Lutheran church is telling them what to do or what not to do. So again, just on the evidence, there was about five pages of testimony where the principal talked about... They encouraged teachers to incorporate the principals. He also talked a little bit about how they start each day with a prayer and a Bible reading, but he doesn't say how much time is devoted to that. He says prayer is offered throughout the day. He doesn't say how often or for how many minutes. He says that chapels are offered weekly for the younger students and bi-weekly for the older students, but he doesn't say whether attendance is mandatory or how long the chapels last for. So we think that this is really, you could even argue, de minimis. And under their test, if all they had to do is make the declaration that were operated primarily for religious purposes and that the state could not question that, which is their position, then you could have a 30-second prayer and get the exemption. They would still have another hurdle to jump, and that is that they're supported or principally controlled by somebody else. So even if they are primarily for secular purposes, this is a two-pronged test, right? Right. It's actually three, but we conceded the first one. Oh, yeah. Right. So, yeah, it's a test that's in the conjunctive, so they have to meet all of the prongs. Oh, yes, yes. So if you find that they're not operated, controlled, supervised, or principally supported by a church, convention of churches, or association of churches, that's it. They don't get the exemption. And that's the case even if they are primarily for religious purposes. Correct. Correct. If the court has no other questions, I'll wait for rebuttal for anything else. Thank you. I guess not. Thank you, Mr. Risset. Mr. Zollinger? Good afternoon, Your Honor. Tim Zollinger on behalf of the Unity Christian. May it please the court, counsel, I'd like to start by addressing some of the points that came up. Justice Slitton, your question to counsel hits the issue smack on the face, smack on the head, if you will, if you're going for a nail at your carpenter. Either the statute says schools that have a primary purpose of religion can be exempt, or we're stuck with the department's and the director's argument that it's really only Sunday schools. Well, what Sunday school is ever a separate, stand-alone entity? They're all operating, in my experience at least, within a church or synagogue. They're part of the religious organization, part of the church. If the test is 90%, 70%, 58% has to be religious instruction, that argument will completely eviscerate the statute. The intent of the legislature was not to limit it to only churches or Sunday schools. You can go to the Boling case, which is really the principal case here, where the court clearly said this parochial school is K-8 Lutheran schools are exempt, and the department is without authority to go pursue contributions from them. It was the same in the Lake Region Seventh-day Adventist case. The department was without jurisdiction, the director was without jurisdiction to pursue contributions. So to narrow this test now, and I argue to my brief, and I'll say it again today, to make it some mathematical formula, let's weigh and balance how much religious instruction you're providing. Basically, it gets rid of the statute. Okay, what about the other prong, though? And that is, in the cases you cited, those schools were in conjunction with churches, correct? Actually, in the Boling case, Ronald, there's no suggestion that that is not a stand-alone. It was associated or a part of the Missouri Senate Lutheran Church, the Boling case. But the community renewal decision that I cite in my brief clearly says, just because you're a separate entity does not mean you can't be, in fact, supported or controlled or part of that convention of churches or association of churches. And what's the evidence in this case that this school was? Well, we have several things, but I would like to note that in the underlying decision, when the director evaluated this, it was never disputed by the director that that prong was met. The recommended decision of the director's hearing officer, the administrative judge, did not address or refute that issue. The director himself, when he issued the decision, said nothing about that issue. That was not to dispute at that level, in our opinion, Your Honor. But to go to Justice Carter's question about what evidence is there, as well as your own, Justice Smith, there were several things. If you look at the Constitution, the history of the school, it was started by the Christian Reformed Churches in the area, in the basement of the church. Members of the association have to be members of the Christian Reformed Churches to be on the school board. Yes, it's a separate board, but they have to be members of the Christian Reformed Churches. The assets of the school, if it were ever dissolved, go to the Christian Reformed Churches. You had evidence of a substantial donation in 2007, and an intent to seek broader appeal from even more Reformed Churches. Had it been in dispute at the director level, certainly more evidence or argument could have been proffered to the director. It was not in dispute. Well, the question was principally supported. It's not necessarily a historical question. Are you principally supported by a church or convention or association of churches? And is the only evidence about financial support $150,000 donation from 2007? Your Honor, there was also reference in the record to the campaign to get even more support from more churches. The dissolution, the assets would go to the churches. I know the answer. There was no budget put into evidence. It was not in dispute at the time, nor was there evidence of where the money comes from. I have a question about that, because when you say not in dispute, your client bore the burden of proof, and this is one of the elements. Is that right? Well, it is, Your Honor, except if you look at the Lake Region case, the director is without jurisdiction. If you're a religious entity, if you qualify under the statute, the director is without jurisdiction. I don't have to disprove jurisdiction. It's the director's obligation to prove he has jurisdiction. So while we may have to come in and produce evidence to show what the case is and what our basis for saying you're religiously exempt, it ultimately was the director's obligation to show the evidence, that he had evidence to support he had jurisdiction. And in Lake Region, the court said if you don't have jurisdiction, you can't make jurisdiction or declare that you had jurisdiction, and the director is not to be given any weight, if you will. Now, as far as you want to address the primary purpose issue, and that is a very important one. Operated primarily for religious purpose, in Section 211-3A, it's not operated while we teach X number of minutes a day of religion. Purpose is the relevant word in that sentence. What is the purpose of this school? It's kind of like asking what is the purpose of this building? What is the purpose of this courtroom? And you can say, well, so we can put furniture in it. No, it's not. The purpose of this courtroom is for your Honorable Justices to decide cases and for people to advocate on behalf of their clients so that justice can be dispensed. The primary purpose of a school is found within its constitution, its vision statement, the very purpose for why it exists. I just want to interrupt for a second. So the only evidence that you point out in the record as principally supported is the statement you made just before. I believe those are the evidence, and we've also set forth in our brief, Your Honor, that principally supported is not necessarily only a financial test. There's no case that I'm aware of that says principally supported is only as to financial. It can be spiritual, it can be volunteer labor, it can be other things. What evidence was put on? I mean, there was a statement about that unity derives spiritual support from the Reformed Church. Yes. But what was the evidence put on with regard to these other volunteers and all this? One of the programs in school around the gate here is operating in one of the churches, so obviously the church is providing overhead, space, things like that. Again, that was not, from our perspective, that was not disputed at the director level, and so we did not focus on that part of the case because the director wasn't contesting it. Well, today, what is your definition of principally? Principally means there has to be a significant amount of support, and that can come in a variety of factors. It can be financial, it can be volunteer, it can be spiritual. What does principally mean to you, like a majority? Well, principally, if the legislature intended to say majority, I believe they would have said majority. I think principally can be suggested to say majority, but it can also mean substantial, which could be slightly less than majority. Again, it's not an exact mathematical figure on it. When we go for primary purpose, we go to things like the constitution, the mission statement. In the school's constitution, the director is critical while there was only one witness. Well, the facts aren't in dispute. The witness was the principal of the school. The documents were put into evidence. The constitution says, Unity Christian School exists, its purpose exists, if you will, to serve Christian families by providing an environment that nurtures a response to God's word through a quality academic and instructional purpose that strives towards excellence under the lordship of Jesus Christ. Further, in the mission statement, in covenant with Christian families, Unity Christian School teaches students the truth from a Christ-centered perspective for the lives of discipleship. Mr. Ritzma, the witness that did testify, talked about the integration of faith throughout the day. The integration of faith throughout the day in all subjects. In all subjects. In every class. In everything the teacher does, they're directed to find a way to integrate those faith principles of the Christian Reformed Church. So we talk about operating for primary purpose. That is the primary purpose. But do the students also learn algebra? Sure. A school wouldn't exist if it didn't also teach the subjects that students need to know. Even members of the Reformed Church need to know algebra, chemistry, biology, things of that nature. Those are critical issues. And when you look at the evidence here, it's clearly operated for primary purpose under that religious component of the statute. And the director, by trying to turn this into some mathematical, well, how many class periods in a day, how many minutes of instruction, well, why didn't we hear from a teacher? Well, you don't have to hear from a teacher. You heard from the principal what the purpose of the school is and how they go about on a day-to-day basis integrating those faith-based principles. And again, Justice Carter, if the director had made an issue out of it, there would have presumably been an opportunity to present more evidence as to the principal support or financial support. And just because we are a separate entity under the community renewal case, if we are in fact spiritually supported, financially supported, supported in time, effort, members, remember the people on the board have to be members of the Christian Reformed Church. So these aren't outsiders coming in, just parents, if you will, of the school. All those things together demonstrate to me, when I look at the evidence, that we've met the test under the statute. If we meet the test under the statute, the director was without jurisdiction to assess charges, benefit charges, under the relevant statute. The director is not to be given deference on that. There's no clearly erroneous standard. Either you have jurisdiction or you don't. It's one or the other. It's not, well, maybe a little bit of jurisdiction. It's either yes or no. And in our view, the answer was the director was without jurisdiction. And for those reasons, and for the reasons set forth in our brief, we asked the court to make the same conclusion, to reach the same conclusion that the circuit court did. And while it's not given any deference, to reach the same decision that the circuit court did was that the director was an error. The director did not properly apply Illinois law. The director is seeking to expand Illinois law. And when you look at the Bowling case, the Lake Region case, those courts were very clear, and the law has not changed. The statute's the same. The law has not changed. Yes, there's a cemetery case out there, Concordia, which says the purpose of that cemetery was to bury the dead. It's not a school case. It's not a school case. We ask that your honors review the matter, properly consider it, and find that the director did improperly apply the law, and find that unaccusement was, in fact, exempt. I'd be happy to answer any questions. I don't think that there are. Thank you, Mr. Zellinger. Mr. Reschent. Thank you. It's kind of deceptive to talk about whether things were disputed by the director, because these were not adversarial proceedings. There's no one on the other side when an applicant asks for an exemption. They just come in and put on what their evidence is. No one puts on contrary evidence to disprove it. So every issue is in dispute. They have to show that they meet the statutory language for the exemption. So whether the director asks them to show that they're principally supported or one of those other three things, they have to show it, because if they don't, they don't meet the exemption criteria. And the director did note in his decision that the school is autonomous. So that means independent, which means that they're not controlled, supervised, or operated by a church. So the director did find that they were not entitled to the exemption. The other thing is, Mr. Zellinger keeps talking about this law change business. The only law change we talked about was that prior to the mid-'70s, all schools were exempt. And then after that point, only certain religious schools were. We have never said that the law has narrowed since those cases, which he refers to, came out. And the reason why we don't is because those cases have nothing to do with the issue in front of this court, because each of those cases involved a school that was not separately incorporated. And if you look, it doesn't say in the appellate decision itself for the Bowling case, but the circuit court order is in the record, and it makes clear that those are church schools. They're not independently incorporated schools. So there is no Illinois case yet that has interpreted what it means to be operated primarily for a religious purpose. And he also kept talking about that their primary purpose is religion. But the statute doesn't say if your primary purpose is religion, you get the exemption. It's if you can show that you're operated primarily for a religious purpose. So we have to look at the actual operations of the school. And as I noted earlier, if a school just spent a 32nd Hail Mary in the morning and then no other mention of religion, it makes no sense to give them a religious exemption. Well, under your test, though, all these schools would be virtually pre-seminaries in order to qualify for the exemption. And there was evidence that they tried to put stuff in everything they do. It's the support issue. You know, it's the second prong. Can you speak to Mr. Zolensky's argument about that? Right. I mean, he was saying that the director wasn't disputing it. But, again, the director didn't have to dispute it. He had to show that either a church, convention of churches, or association of churches either supported, controlled, or operated them. And we said that their evidence actually refutes that, and that shows that because it shows that they're autonomous and not subject to any church. Or they could show that they're principally supported. And we think that that means financial support, because what else could it mean? Why would the legislature take a standard as nebulous as spiritual support, whatever that even means, and how could the director ever decide on a case-by-case basis whether the school got enough spiritual support from churches as opposed to financial support, which is dollars and cents, and you can actually see what percentage of their budget is coming from what source. So I think that's a bit of a stretch to claim that any kind of support would qualify for that. And, again, as Your Honor pointed out, principally, just like primary, means majority or 50 plus .1 percent. So if a school... And they say, what other school would qualify? Well, we do these on a case-by-case basis, and the issue is whether they qualify, not whether somebody else qualifies. And they don't know every school's curricula, and some schools may spend more than half their day on religion. And if they do, then they would get the exemption. It's no answer to them not proving their case. What if you say we're setting up this school? Why? Well, to teach the same things. But because if I go to that public school over there, there's only one reason I'm not going to a school district, whatever, a public school, because we can't have prayer, we can't talk about God, we can't talk about... Right. And so for that reason, and that reason alone, we're setting up this school. And so wouldn't that make religion the principal reason that that school is set up to avoid the strictures on religious conduct or learning in a public school? No, because it's not talking about operation. In that case, they would have both a secular purpose and a religious purpose. We can see that. But the religious purpose would be subordinate to the dominant purpose, which is secular. That's why the legislature used the word operate. So look at how they actually conduct their days. And if they're spending the majority of the day on the same courses that the kids take at the public school that they need to do well on their SAT and get into college, then they're not being operated primarily for a religious person. That might be the motivation why they opened the school. But every parochial school teaches the same, spends most of their day on secular stuff. Right, and most of them would not qualify for the exemption, Your Honor. That's your time, sir. Thank you. Okay. Thank you, Mr. Wood. Any other questions? Thank you, Mr. Reset. Thank you both for your arguments today. We will take this matter under advisement, get back to you with a written disposition within a short day. I'm going to now take a short recess for the panel.